# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| VERNON SAINE, III, | : | |
| Plaintiff, | : | |
| | | Case No. 3:07cv00401 |
| vs. | : | |
| | | District Judge Walter H. Rice |
| MICHAEL J. ASTRUE, | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

## I.  INTRODUCTION

Plaintiff Vernon Saine, III suffers from several medical problems that interfere with his ability to perform work activities. These problems led Plaintiff to turn to the Social Security Administration in February 2004 seeking financial assistance by applying for Supplemental Security Income (SSI). Plaintiff's SSI application asserted that beginning on January 1, 1991, his medical problems precluded him from performing any significant paid job. (Tr. 56-58).

After initial administrative denials, a hearing was held on July 13, 2006 before Administrative Law Judge (ALJ) James I.K. Knapp. (Tr. 415-42). In a later written decision, the ALJ concluded that Plaintiff's medical problems did not constitute a "disability" within the meaning of the Social Security Act. (Tr. 18-30). The ALJ's non-disability determination and resulting denial of Plaintiff's SSI application became the final decision of the Social Security Administration. Such final decisions are subject to judicial review, *see* 42 U.S.C. §405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #11), the administrative record, and the

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

record as a whole.

Plaintiff seeks an Order remanding this case to the Social Security Administration to correct certain errors. The Commissioner seeks an Order affirming the ALJ's decision.

## II. ADDITIONAL BACKGROUND

Plaintiff's age (forty-eight) on the date of the ALJ's decision placed him in the category of a "younger person" for purposes of resolving his SSI application. *See* 20 C.F.R. §416.963(c). Although he dropped out of high school in the twelfth grade (Tr. 420), the ALJ found he has the equivalent of a high school education. (Tr. 30). Plaintiff last worked as waiter in 2001 with the exception of "[v]arious odd jobs" from 1987 to 2004. (Tr. 66, 107).

Plaintiff testified during the ALJ's hearing that he left his last job because they cut his hours and because of his "health." (Tr. 422). He was diagnosed HIV positive in 1991. (Tr. 21, 65-66, 123). Plaintiff reports, "I get very tired from not having energy. I have little to no strength, stay dizzy and tired. I feel like I have the flu every day. (Tr. 65). He takes prescription medications to treat the HIV but the medications make him feel like he has the flu. (Tr. 426). His lab studies have shown relatively stable "fair" T-cell counts, except for a short period when he was off medications to test for side effects. *See* Tr. 151-61, 252-84, 400, 419, 425, 435. This occurred from late 2005 until March of 2006 so his doctors could determine if medications were causing his kidney stones. (Tr. 419, 425, 432).

Plaintiff has undergone five surgeries for kidney stones, the last in June 2005. (Tr. 422). He continues to have kidney stones along with pain. The pain starts on one side and moves around to the stomach. Plaintiff described the pain as follows: "It could make you curl up into a ball. I'm having back problems because of it. It makes you nauseated, fluid – you throw up bile without – because of your appetite, you lose your appetite." (Tr. 423). Vicodin helped relieve some of his pain.

Plaintiff also testified that he suffers from depression and that during his normal day, he spends 18-20 hours lying in bed. (Tr. 427). He also testified that he sleeps no more than five hours during the day and maybe three hours during the night. (Tr. 429). His symptoms of depression including suicidal thoughts and feeling worthless. He testified, "I'm not contributing anything towards a better life for me, and that's because of my HIV too." (Tr. 427). He sees a psychiatrist and counselor for his depression. His medications have sometimes been "too

strong," and he recently had them switched. (Tr. 428). He took Prozac "every now and then." *Id*. And he was on Klonopin, which he took daily. *Id*.

During the ALJ's hearing, Plaintiff testified about his limited daily activities. He cooks meals for himself, but he usually just ate bread or toast and a cold piece of meat. He cleans up his dishes afterwards, but it isn't that many. He usually swept once a month and could do his own laundry. (Tr. 429). He helps once a month with grocery shopping. (Tr. 429-30). He did not visit others and people did not visit him. He might visit his mother on holidays. He did prune his roses when the blooms died, but he did little other yard work. (Tr. 430-31).

Plaintiff estimated that he could walk two blocks before needing to rest. He thought he could stand an hour if he could lean on something. He stated he could lift 50 pounds but he didn't know how many times he would be able to lift 50 pounds. (Tr. 431-32).

Turning to the other evidence and other information in the administrative record, the parties have provided informative and detailed descriptions of that evidence. *See* Doc. #8 at 3-8; Doc. #11 at 4-9. In light of this, and upon consideration of the complete administrative record, additional detailed discussion of the record would be unnecessarily duplicative. Yet a general identification of certain medical sources will inform further review.

Plaintiff acknowledges, "there is no treating physician opinion to which controlling weight could be given...." (Doc. #8 at 11). The administrative record, however, contains the opinions of several other medical sources.

In April 2004 reviewing physician Dr. Walter A. Holbrook assessed Plaintiff's physical impairments and limitations for the Ohio Bureau of Disability Determinations (Ohio BDD). Dr. Holbrook opined that Plaintiff could occasionally lift twenty pounds and frequently lift ten pounds; stand/walk/sit about six hours each in an eight-hour work day; and push and pull without limitation. (Tr. 169). Dr. Holbrook explained that examination notes in March 2004 indicated Plaintiff's weight was 173.3, he had occasional headaches, was neurologically intact, lungs were clear, and "the HIV is now resistant to some of the previous treatment." (Tr. 169). Plaintiff had no manipulative, visual or communicative limitations. And he was limited to balancing occasionally and to climbing ladders, ropes and scaffolds occasionally. (Tr. 170). Another reviewing physician, Dr. W. Jerry McCloud, affirmed Dr. Holbrook's opinion in October 2004. (Tr. 172).

3

In May 2004 psychologist Dr. Bonds examined Plaintiff for the Ohio BDD. (Tr. 122-29). Plaintiff reported resting 15 hours a day due to lack of energy. His activities included going grocery shopping, walking his dog, doing housework, doing laundry at home, playing basketball occasionally, and going to a flea market. (Tr. 125). He gets around by taking the bus. *Id.* He denied having difficulties with his former work supervisor or coworkers, and he denied a history of tardiness, absenteeism, or conflict. On mental status examination, Dr. Bonds noted that Plaintiff's mood seemed depressed, and his affect was broad and appropriate. Plaintiff reported feelings of hopelessness and helplessness. He thought of suicide but he had no plans. He felt tired all the time and noted he did not sleep well because he worried too much. He also reported problems with his temper and problems with remembering things. Dr. Bonds observed that Plaintiff displayed some signs of anxiety during the examination such as tense posture and fidgeting. He was noted to be polite and cooperative throughout the testing, despite the fact he felt nauseous. IQ testing showed scores in the low average range. General and Immediate memory indexes were in the average range although working memory was in the low average range. Plaintiff's reading ability was measured at the ninth-grade level. Dr. Bonds diagnosed a major depressive disorder (severe and recurrent) and assigned Plaintiff a Global Assessment of Functioning score of 50 (Tr. 127), which indicates serious symptoms ... or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)...." Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision at p. 34.[2]

Dr. Bonds opined that Plaintiff had moderate limitations in his abilities to relate to others; maintain concentration, persistence or pace to perform simple repetitive tasks; withstand the stress and pressure of daily work activities. He had no significant limitations in his ability to understand, remember and follow directions. (Tr. 127).

In July 2004 a record-reviewing psychologist, Dr. Roger O. Lewis, Jr., opined that

---

[2] Global Assessment Functioning is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Commissioner*, 61 Fed.Appx. 191, 194 n.2 (6th Cir. 2003); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision at 32-34.

Plaintiff had moderate restrictions in his activities of daily living; and moderate difficulty in social functioning as well as in maintaining concentration, persistence or pace. (Tr. 184). Regarding Plaintiff's work-related abilities, Dr. Lewis found no significant limitations in Plaintiff's ability to remember locations and work like procedures; understand, remember, and carry out very simple and short instructions; sustain an ordinary routine; make simple decisions; ask simple questions or request assistance; accept instructions and respond appropriately to criticism; maintain socially appropriate behavior and adhere to basic standards of cleanliness and neatness; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or take public transportation; and set realistic goals or make independent plans. (Tr. 186-87). Dr. Lewis found moderate limitations in Plaintiff's ability to understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; perform regular activities within a schedule, maintain regular attendance and be punctual; work with or near others; perform at a consistent pace; interact appropriately with the public and get along with coworkers; and respond appropriately to changes in the workplace. *Id*.

Dr. Lewis concluded that Plaintiff was able to understand, remember and execute one to two step tasks in a non-social environment, but that he should not be expected to meet stringent production quotas. (Tr. 189). In October 2004 a reviewing physician, Dr. DeMuth, affirmed Dr. Lewis' opinions. (Tr. 188).

Plaintiff saw psychiatrist Dr. Mark Blair in June 2006. The following month, Dr. Blair completed interrogatories. (Tr. 383-92). He diagnosed Plaintiff with major depressive disorder (recurrent) and anxiety disorder. (Tr. 384). Dr. Blair believed that Plaintiff would not be prompt and regular in attendance, noting he had a history of missed appointments and was uncomfortable leaving his home. (Tr. 386). Dr. Blair thought that Plaintiff's depression would make day-to-day functioning in an emotionally stable manner difficult. (Tr. 388). Dr. Blair indicated that Plaintiff had a markedly low energy level and his psychological symptoms would be a distraction to a consistent pace. (Tr. 389). He did feel Plaintiff could understand and carry out simple work instructions; sustain an ordinary routine; and accept instructions and respond appropriately to criticism. (Tr. 391). Dr. Blair concluded that Plaintiff had a moderate restriction in activities of daily living; marked difficulties in maintaining social functioning; and marked deficiencies in concentration, persistence or pace. (Tr. 391-92). Dr. Blair did not know

5

whether Plaintiff could withstand the pressure of meeting productivity and accuracy standards; sustain attention and concentration to meet productivity and accuracy standards; maintain concentration and attention for two hour segments; or respond appropriately to workplace changes. (Tr. 383-90).

Dr. Blair also completed a Medical Assessment of Ability to do Work Related Activities form. (Tr. 393-95). Dr. Blair believed that Plaintiff had a good ability to understand, remember and carry out both simple and complex job instructions, and to maintain personal appearance. He found that Plaintiff had a fair ability to follow work rules; interact with supervisors; deal with work stressors; function independently; maintain attention and concentration; understand, remember and carry out detailed but not complex instructions; and behave in an emotionally stable manner. He opined that Plaintiff had a poor or no ability to either deal with the public; relate predictably in social situations; or demonstrate reliability. He was not able to determine Plaintiff's ability to relate to coworkers. *Id*.

After the hearing, a medical expert, Dr. Paul Boyce answered written interrogatories a provided a narrative of his record review. (Tr. 400-03). Dr. Boyce described that Plaintiff's CD4 counts as "fair," although he confirmed that Plaintiff's viral load values were worse when he was off medications. Dr. Boyce noted Plaintiff's weight ranged from 160 -190 pounds. He further noted the lack of any opportunistic infections. Dr. Boyce did not think that Plaintiff's kidney stones were related to his HIV infection. Dr. Boyce opined that Plaintiff's impairments do not meet or equal a listed impairment. *Id*.

## III. ADMINISTRATIVE REVIEW

The term "disability" – as defined by the Social Security Act – carries a specialized meaning of limited scope. Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are "medically determinable" and severe enough to prevent the claimant (1) from performing his or her past job, and (2) from engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence. *See* Tr. 18-30; *see also* 20 C.F.R. §416.920(a)(4). Although a dispositive finding at any Step terminates the ALJ's review, *see also*

6

*Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the evaluation answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

In the present case the ALJ found at Step 2 that Plaintiff had the following severe impairments: "HIV, major depression, and, since August 2004, recurrent kidney stones." (Tr. 29). The ALJ determined at Step 3 that Plaintiff does not have an impairment or a combination of impairments that meet or equal one in the Listings. *Id*.

At Step 4 the ALJ placed Plaintiff's Residual Functional Capacity at a limited range of light work.[3] The ALJ described his specific findings as follows:

> The claimant lacks the residual functional capacity to: (1) lift more than 10 pounds frequently or 20 pounds occasionally; (2) do any significant or continuous walking as part of regular job duties; (3) climb ladders or scaffolds; (4) work at unprotected heights or around moving machinery; (5) have greater than occasional contact with the public, supervisors, or co-workers; (6) follow complex instructions; or (7) do other than low stress work activity (i.e., no job involving above average pressure for production, work that is other than routine in nature, or work that is hazardous).

(Tr. 29). This assessment, along with the ALJ's findings throughout his sequential evaluation, led him to ultimately conclude that Plaintiff was not under a disability and hence not eligible for

---

[3] The Regulations define light work as involving the ability to lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...." 20 C.F.R. §416.967(c).

7

SSI. (Tr. 29-30).

## IV. JUDICIAL REVIEW

Judicial review of an ALJ's decision determines whether substantial evidence in the administrative record supports the ALJ's factual findings. *Bowen v. Comm'r. of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007). "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bowen*, 478 F.3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)). It consists of "'more than a scintilla of evidence but less than a preponderance...'" *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Judicial review for substantial evidence is deferential not *de novo*. *See Cruse v. Commissioner of Social Sec*. 502 F.3d 532, 540 (6th Cir. 2007); *see also Cutlip v. Secretary of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The Court's agreement or disagreement with the ALJ's findings plays no role in the substantial evidence review, and no significance attaches to contrary evidence in the record – if other substantial evidence supports the ALJ's findings. *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Reviewing for substantial supporting evidence is not the stopping point of judicial analysis. Courts also examine the administrative decision to determine whether the ALJ applied the correct legal criteria. *See Bowen*, 478 F.3d at 746. If the ALJ did not, the decision may not be upheld even when substantial evidence supports the ALJ's findings. *See id.* For example, a decision will not be upheld where the ALJ failed to apply the standards mandated by the Social Security Regulations and where that failure prejudices a claimant on the merits or deprives the claimant of a substantial right. *See Bowen*, 478 F.3d at 746 (and cases cited therein). Through *Bowen* and other recent Sixth Circuit cases, an ALJ's failure to apply the correct legal criteria – at least when evaluating medical source opinions – mandates further judicial review for harmless error. *Bass II v. McMahon*, 499 F.3d 506, 512 (6th Cir. 2007); *see Bowen*, 478 F.3d at 747-49; *see also Wilson*, 378 F.3d at 547-49 (offering examples of possible *de minimis* errors). Consequently, if the ALJ erred by not applying the correct legal criteria but the error was harmless, the decision should be affirmed. *See Bass II*, 499 F.3d at 512 (and cases cited therein).

8

## V. DISCUSSION

### A. Medical Source Opinions

**1.**

Plaintiff contends that the ALJ erred in his evaluation of several medical source opinions including evaluating psychologist, Dr. Bonds; state agency reviewing physicians, Drs. Lewis and DeMuth; and one-time treating psychologist, Dr. Blair. Plaintiff reasons that the ALJ failed to apply the correct legal criteria during his evaluation of the above opinions, especially by oversimplifying the opinions of Drs. Bonds, Lewis, and DeMuth and by declining to give Dr. Blair's opinion controlling or deferential weight.

**2.**

Social Security Regulations require ALJs to evaluate every medical opinion of record regardless of its source. *See* 20 C.F.R. §416.927(d). The required evaluation first focuses on treating physicians or psychologists, whose opinions are entitled to controlling weight under the treating physician rule as long as they are (1) well supported by medically acceptable data and (2) not inconsistent with other substantial evidence of record. 20 C.F.R. §416.927(d)(2); *see Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004). When these requirements are not met, the treating physician rule does not apply. *Id*.

Once the ALJ has concluded that the treating physician rule does not apply to a particular treating source's opinion, the evaluation has only just begun. The ALJ must continue to evaluate the treating source's opinion under several remaining factors described by the Regulations, including "supportability," "consistency," "specialization," and "other factors" brought to the ALJ's attention. 20 C.F.R. §416.927(d)(2)-(6); *see Wilson*, 378 F.3d at 544.

As to non-treating medical sources – such as one-time examiners or medical experts who testify during the administrative hearing – ALJs must evaluate their opinions under the same factors applicable to treating medical sources – supportability, consistency, specialization, *etc*. *See* 20 C.F.R. §416.927(d), (f). The Regulations appear to emphasize this requirement by reiterating it no less than three times. *See* 20 C.F.R. §416.927(d) ("we consider all of the following factors in deciding the weight to give any medical opinion...."); *see also* 20 C.F.R. §416.927(f)(ii) (factors apply to opinions of state agency consultants); 20 C.F.R. §416.927(f)(iii) (same as to medical experts' opinions); Social Security Ruling 96-6p, 1996 WL

374180 at *2 (same).

### 3.

The ALJ correctly described the legal standards applicable under the treating physician rule and also correctly described the additional regulatory factors that apply to treating physicians and other medical sources under 20 C.F.R. §§416.927(d) and (f). *See* Tr. 24-26. The ALJ then applied the correct legal criteria to Dr. Blair's opinion, finding it not entitled to either controlling or deferential weight. *See* Tr. 25.

Substantial evidence supports the ALJ's decision not to place controlling or any deferential weight on Dr. Blair's opinion. The ALJ provided a detailed assessment of, and several reasons for, not crediting Dr. Blair's opinion, and substantial evidence supports the ALJ's reasons. *See* Tr. 25-26. First, prior to the date Dr. Blair provided his opinion, he had only seen Plaintiff one time. *See* 20 C.F.R. §416.927(d)(2) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."); *see also Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Second, Dr. Blair had provided mutually inconsistent assessments of Plaintiff, reflecting a lack of experience in applying Social Security functional rating categories. *See* Tr. 25-26, 383-92, 393-95); *see also Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993) (physician's opinion properly discounted in light of conflicting evidence from same physician). Third, Dr. Blair's opinion was inconsistent with other medical evidence, including the records from Advanced Therapeutic Services and Dr. Bonds. *See* Tr. 25-26; *see also Cutlip v. Secretary of Health and Human Svcs.*, 25 F.3d 284, 287 (6th Cir. 1994) (physician's opinions not entitled to great weight when there is substantial contrary medical evidence).

Contrary to Plaintiff's contentions, the ALJ also evaluated the opinions of the state agency consultants and Dr. Bonds using the regulatory factors. The ALJ specifically explained the nature and scope of their relationships with Plaintiff. *See* Tr. 22, 24, 26. The ALJ also set out the ways in which their opinions were consistent with each other and with other evidence in the record. *See* Tr. 24-26. The ALJ's assessment of Plaintiff's Residual Functional Capacity (RFC) reasonably accounts for the limitations set by Dr. Bonds. The ALJ noted Dr. Bonds's findings multiple times, and the ALJ explained, "The ... restrictions I have imposed limiting the claimant to low stress jobs ... are based primarily upon Dr. Bond's [sic] findings of moderate

10

impairments." (Tr. 24). Indeed, the ALJ's restriction against contact with others reflects Dr. Bonds's opinion. The ALJ's restriction on complex instruction is, in Plaintiff's favor, stricter than Dr. Bonds's opinion. And, the ALJ's prohibition against above-average production pressure – like his concurrent limitation against non-routine work – accounts for Dr. Bonds's opinion of moderate limitations on handling work pressures. Thus, contrary to Plaintiff's contention, the ALJ's conclusion represents a reasonable assessment of Dr. Bonds's opinions.

The ALJ's decision is also supported by the opinions of the state agency consultants, Drs. Holbrook and McCloud. Plaintiff contends that the ALJ's prohibition against complex tasks is inadequate in light of the opinions of these state agency consultants, whom, according to Plaintiff, limited him to work involving one-to-two-step tasks. (Doc. #8 at 13-14). Plaintiff's argument rests upon a flawed interpretation of the record. These physicians stated that Plaintiff was able to execute one-to-two-steps tasks, but they did not specify that he was limited to such tasks. *See* Tr. 189. Instead, they found him only moderately limited in his ability to understand, remember and carry out detailed instructions. *See* Tr. 187. These physicians also found no limitations in Plaintiff's ability to: understand, remember, and carry out very simple and short instructions; sustain an ordinary routine; make simple decisions; ask simple questions or request assistance; and accept instructions and respond appropriately to criticism. *See* Tr. 187-88. Moreover, by restricting Plaintiff to noncomplex, routine work that did not involve above-average production pressure or extensive interaction with others, the ALJ amply accounted for these limitations on Plaintiff's mental work abilities.

Accordingly, Plaintiff's challenges to the ALJ's assessments of the medical source opinions lack merit.

### B. <u>Combination of Impairments</u>

Plaintiff contends that the ALJ did not properly consider his HIV status and depression in combination when assessing his description of his high level of fatigue. Contrary to Plaintiff's assertion, however (as explained below), it is apparent from the structure of the ALJ's decision that he properly considered Plaintiff's impairments in combination. *See Villareal v. Secretary of Health & Human Servs.*, 818 F.2d 461, 464 (6th Cir. 1987) (the "structure" of ALJ's decision shows that he considered impairments in combination).

"The Social Security Act requires the Secretary [now, the Commissioner] to consider the

11

combined effects of impairments that individually may be nonsevere, but which in combination may constitute a medically severe impairment or otherwise evince a claimant's disability. 42 U.S.C. §423(d)(2)(C)." *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988). The United States Court of Appeals for the Sixth Circuit has held, "An ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a 'combination of impairments' in finding that the plaintiff does not meet the listings." *Loy v. Secretary of Health & Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990) (citing *Gooch v. Secretary of H.H.S.*, 833 F.2d 589 (6th Cir. 1987)).

In the present case, at Step 2 of his sequential analysis, the ALJ found "that the evidence establishes that the claimant has the following severe impairments which substantially reduce the claimant's ability to perform basic work-related functions: HIV, major depression and since August 2004, recurrent kidney stones." (Tr. 21). The ALJ's consideration of multiple severe impairments and his use of the plural "impairments" sufficiently indicates his consideration of Plaintiff's impairments in combination at Step 2. *See Loy*, 901 F.2d at 1310.

The ALJ's decision also reveals that at Step 3 of the sequential analysis, the ALJ considered Plaintiff's "impairments" – plural – and his conclusion that Plaintiff does not have a combination of impairments that meet or equal the Listings, *see* Tr. 23, is sufficient to show that the ALJ considered the combination of Plaintiff's impairments at Step 3. *See Loy*, 901 F.2d at 1310. In addition, the ALJ's decision adequately demonstrates that he considered all Plaintiff's impairments in combination as required at Step 4 of the sequential evaluation. Although the ALJ found no objective evidence fatigue, he accommodated Plaintiff's fatigue when assessing his RFC by including "a restriction against significant or continuous walking as part of the claimant's regular job duties as well as restrictions against climbing ladders or scaffolds or working at unprotected heights or around moving machinery." (Tr. 24). The ALJ further explained his consideration of the combination of Plaintiff's HIV and fatigue by writing, "The walking restriction is added to address claimant's testimony that he found walking to be particularly debilitating, a claim that is reasonable, at least at times, in view of his HIV condition. Hazard restrictions are added as a precaution due to his alleged fatigue and medications." (Tr. 24).

Accordingly, Plaintiff's contention that the ALJ failed to consider the combination of his

impairments lacks merit.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's final non-disability decision be affirmed; and

2. The case be terminated on the docket of this Court.


January 8, 2009

                                              s/ Sharon L. Ovington
                                                   Sharon L. Ovington
                                         United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall
promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).